UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                      :

CLAUDIA MARIE LEE,                     :

                     Plaintiff,       :

                                        :

               -against-         :               23-CV-7064 (VSB)

                                        :

                                        :               **<u>OPINION & ORDER</u>**

TOWN OF WAWAYANDA, *et al.*,       :

                                        :

                         Defendants.   :
--------------------------------------------------------X

<u>Appearances</u>:

Claudia Marie Lee
Manhattan, NY
*Pro se Plaintiff*

Adam Rodd
Drake Loeb PLLC
New Windsor, NY
*Counsel for Defendants Town of Wawayanda, Wawayanda Town Court & Shawn R. O'Connor*

Ian Ramage
NYS Office of The Attorney General
New York, NY
*Counsel for Defendant Matthew J. O'Connell*

Mamoon Saleemi
John Edmund Schemitsch
New York City Law Department
New York, NY
*Counsel for Defendants Rajesh Sharma, Jean Paul Rozenbenz & Ahmad Y. Othman*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Before me are pro se Plaintiff Claudia Marie Lee's objections to Magistrate Judge

Jennifer Willis's Report and Recommendation, which recommends that I dismiss Plaintiff's

complaint, (Doc. 1 ("Compl." or "Complaint")), with prejudice, and deny Plaintiff's motion for

leave to amend her complaint. For the reasons that follow, Plaintiff's objections are

OVERRULED, Judge Willis's Report and Recommendation is ADOPTED in its entirety, Plaintiff's motion to amend her complaint is DENIED, and the case is DISMISSED with prejudice.

## I.       Background and Procedural History

Plaintiff filed her Complaint against the Town of Wawayanda, the Wawayanda Town Court, Judge Shawn R. O'Connor, the New York City Police Department, Matthew J. O'Connell, Jean Paul Rozenbenz, Rajesh Sharma, Ahmad Y. Othman, and John Does 1-10, on August 10, 2023.  (Compl.)  Plaintiff Claudia Marie Lee ("Plaintiff" or "Lee") is a resident of Manhattan, New York.  (*Id.* ¶ 1.)  Judge Shawn R. O'Connor ("Judge O'Connor") is a municipal court judge for the Town of Wawayanda.  (*Id.* ¶ 4.)  Matthew J. O'Connell ("Trooper O'Connell") is a state trooper for the New York State Police.  (*Id.* ¶ 6.)  Rajesh Sharma, Jean Paul Rozenbenz, and Ahmed Y. Othmen are Police Officers for the New York City Police Department ("NYPD Defendants").  (*Id.* ¶¶ 7–9.)  Plaintiff also brings claims against "John Doe[s] 1-10" who, according to her, are "other defendants whose names are unknown [] at this time and require discovery."  (*Id.* ¶ 10.)  Plaintiff's causes of action arise out of an incident that occurred in 2017, in which she claims that Trooper O'Connell issued her a ticket for having an uninspected vehicle and wrongly suspended her license.  (*Id.* ¶¶ 15–18.)  Plaintiff then alleges that subsequent stops made by the NYPD Defendants were also unlawful.  (*Id.* ¶¶ 25–38.)

Plaintiff claims that Trooper O'Connell stopped her and gave her a ticket on January 21, 2017, for having an uninspected vehicle.  (*Id.* ¶ 15.)  Plaintiff then claims she mailed proof of her car's inspection to the Wawayanda Town Court and moved to dismiss the ticket.  (*Id.* ¶¶ 16–17.)  On August 20, 2017, Plaintiff's license was suspended by the Wawayanda Town Court for failure to appear and answer Trooper O'Connell's ticket in Wawayanda Town Court.  (*See id.* at

32 (November 18, 2021 Department of Motor Vehicles letter providing: "Your privilege to drive has been suspended for failure to answer ticket #2F236K2GLX.  You must contact the court below to resolve this issue:  Town of Wawayanda, 80 Ridgebury Hill Rd., Slate Hill, NY 10973.").)  On November 2, 2017, Plaintiff mailed correspondence to the Wawayanda Town Court claiming that the suspension of her license was unlawful because Trooper O'Connell's ticket was "given on [] private property."  (*Id.* ¶ 19; *see also id*. at 25–26 (2002 Honda Accord Express Trust).)  Following this correspondence, Plaintiff claims she contacted several New York State public officials about her license suspension.  (*Id.* ¶ 20.)  Plaintiff also alleges that the Driver's License Suspension Reform Act ("DLSRA"), a New York law enacted in December 2020, which required the Commissioner of the Department of Motor Vehicles ("DMV") to remove certain suspensions starting on April 1, 2021, (Doc. 78 ("Report," "Report and Recommendation," or "Rep.") at 1), required the Department of Motor Vehicle to remove the suspension of her registration.  (Compl.  ¶¶ 21–22.)

On October 17, 2021, Plaintiff "was stopped . . . and arrested" by the NYPD Defendants, who requested "a license, registration and insurance."  (*Id.* ¶¶ 25–27.)  Specifically, Defendant Sharma allegedly "said Plaintiff was under arrest and used double handcuffs with [her] hands behind [her] back exerting unreasonable amount[s] of brute force and then demanded and forced [her] into their police vehicle" and upon arrival at the 30th Precinct her "right knee hit a black ste[e]l bar in the Police Vehicle as [she] tried to exit their car."  (*Id*. ¶ 26.)  Plaintiff claims to have required hospitalization as a result of the NYPD Defendants' conduct during the course of the arrest and transport to the precinct.  (*Id.* ¶¶ 28–29.)

Between November 2021 and December 2022, Plaintiff claims to have petitioned the Town of Wawayanda and the DMV multiple times, requesting that the suspension on her license

3

be removed. (*Id.* ¶¶ 30–35.) She also alleges that a judge from the New York Criminal Court dismissed charges against her and provided her with a document that she was to provide to the DMV in order to have them remove all suspensions, which they refused to do. (*Id.* ¶¶ 34–35.)

On the basis of this conduct, Plaintiff claims that her "Right to Travel" was violated by all Defendants. (*Id.* ¶¶ 39–42.) She also pleads a "search and seiz[u]r[e]" cause of action against the NYPD Defendants, (*id.* ¶ 43), and a cause of action for "Emotional and Physical Injury and Misconduct" against all Defendants, (*id.* ¶¶ 44–47). Finally, she argues that the Defendants' actions violated "the U.S. Constitution - Article IV, Section 1, Bill of Rights - Amendment IX, Rights Retained by the People, Fourteenth Amendment - Section 1, the New Hampshire House Bill 1778-FN-A-LOCAL Revised 2/15/2018 - Right to Travel Sections I (a),(c),(e) and III, DRIVER LICENSE SUSPENSION REFORM ACT- 74630B enacted December 31, 2020 that cancels the Suspension(s) effective April 1, 2021." (*Id*. ¶ 48)

On October 6, 2023, Judge O'Connor, the Town of Wawayanda, and the Wawayanda Town Court (the "Wawayanda Town Defendants" or "Town Defendants") moved to dismiss Plaintiff's Complaint. (Doc. 19.) Plaintiff filed her opposition on November 17, 2023. (Doc. 37.) The Wawayanda Town Defendants filed their reply on December 1, 2023. (Doc. 44.)

On November 13, 2023, Trooper O'Connell moved to dismiss the claims against him, filing a motion and an accompanying memorandum of law. (Docs. 32–33.) Plaintiff filed her opposition on December 1, 2023. (Doc. 46.) Trooper O'Connell filed a reply in support of his motion on December 22, 2023. (Doc. 53.)

On March 8, 2024, the NYPD Defendants moved to dismiss for failure to prosecute. (Doc. 61.) On March 25, 2024, Plaintiff submitted her opposition to the NYPD Defendants'

motion to dismiss.  (Doc. 70.)  On April 17, 2024, the NYPD Defendants filed a reply letter.  (Doc. 74.)

On March 19, 2024, I referred all motions to Magistrate Judge Willis for a Report and Recommendation.  (Doc. 64.)  On August 27, 2024, Magistrate Judge Willis issued a report and recommendation that I dismiss Plaintiff's claims in full.  (Rep.)  On September 13, 2024, Plaintiff submitted her objections to Magistrate Judge Willis's Report and Recommendation.  (Doc. 82 ("Objections" or "Objs.").)  On September 14, 2024, Plaintiff filed supplemental objections to Magistrate Judge Willis's Report and Recommendation.  (Doc. 83 ("Supp. Objs.").)  On September 27, 2024, the Wawayanda Defendants filed their Responses to Plaintiff's Objections to the Report and Recommendation.  (Doc. 86 ("Wawayanda Resp.").).

On October 10, 2024, Plaintiff filed a motion for leave to amend her complaint.  (Doc. 91.)  On November 1, 2024, Plaintiff submitted her proposed first amended complaint, which was entered on November 7, 2024.  (Doc. 94.)  On November 18, 2024, Officer O'Connell filed his opposition to Plaintiff's motion.  (Doc. 99.)  On November 22, 2024, the Wawayanda Town Defendants filed their opposition to Plaintiff's motion.  (Doc. 104.)  On November 22, 2024, the NYPD Defendants submitted their opposition to Plaintiff's motion.  (Doc. 106.)  On December 6, 2024 and December 9, 2024, Plaintiff filed documents that I construe as replies to Defendants' oppositions to her motion for leave to amend.  (Docs. 107–09.)

## II.    Legal Standard

### A.  *Report and Recommendation*

After a magistrate judge issues a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "To accept the report and recommendation of a

magistrate [judge], to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers & Pointers Loc. Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted). Where specific objections are made, the court is obligated to review the contested issues de novo. *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error. *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). "Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023). In other words, "a party is not to be afforded a second bite at the apple when filing objections to a Report and Recommendation, as the goal of the federal statute providing for the assignment of cases to magistrate[] [judges] is to increase the overall efficiency of the federal judiciary." *Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375, 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) (internal quotation marks and alterations omitted). Even when exercising de novo review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Loc. 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order).

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-

3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006).  Accordingly, "where a pro se party's objections to a report and recommendation are 'conclusory or general,' or where a plaintiff 'simply reiterates his original arguments,' the report should be reviewed only for clear error." *DeGrate v. Broad. Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *2 (S.D.N.Y. Feb. 20, 2013) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

### B.  *Leave to Amend*

Under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend is to be freely given when justice requires." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013). However, courts will deny leave to amend in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).  A "Plaintiff's *pro se* status entitles him to additional solicitude," but "does not excuse his compliance with either the Federal Rules of Civil Procedure or . . . provide a basis for failing to apply the appropriate legal standard." *Noel v. Clouston*, No. 21-CV-06559, 2025 WL 1640731, at *2 (W.D.N.Y. May 2, 2025); *see also Gross v. Sanchez,* No. 20-CV-4873, 2023 WL 5486249, at *2 (E.D.N.Y. Aug. 24, 2023) ("[E]ven *pro se* litigants, as Plaintiff is here, are required to adhere to the federal and local rules in the same manner as other litigants.") (collecting cases).

### III.    Discussion

### A.  *Plaintiff's General Objections*

Plaintiff first proffers several objections to certain facts contained in Judge Willis's Report and Recommendation, none of which challenge or change the conclusions in the Report.

(Objs. 1–10.)  For example, Plaintiff objects to the way her "name and entrance" are portrayed in the Report, apparently taking issue with the fact that her reference to herself as a "State Citizen of New York" was omitted.  (*Id.* at 1.)  This fact is not legally relevant.  Plaintiff also objects to Judge Willis's "fail[ure] to state Plaintiff was traveling from an immediate family members funeral."  (*Id.*)  She further claims she was not "walking away from her auto" but rather "turned and was walking back toward her auto" when the ticket was issued by Trooper O'Connell.  (*Id.* at 2.)  She says that "Judge Willis incorrectly stated" "the number of three (3) NYPD officers in total at the stop," even though the referenced paragraph of the Report includes the names of the three NYPD Defendants.  (*Id.* at 3.)  She objects to the failure to "mention the injury received" on her knee, even though that injury is described in the Report.  (*Compare id.* at 4, *with* Rep. 4 ("Ms. Lee claims . . . she saw her 'right knee was bleeding and swelling'").)  She claims the Report mischaracterizes the timing of her fingerprinting.  (Objs. 5.)  Plaintiff further argues that the Report "misunderstood physical and emotion[al] harm caused by O'Connell and the Wawayanda Town Court Defendants," by failing to incorporate certain facts, including that "[she] is the head of her family and has family responsibilities."  (*Id.* at 5.)  None of these facts is legally relevant, material to the findings in the Report, or calls into question the ultimate conclusions reached in the Report.

### B. *Trooper O'Connell's Motion to Dismiss*

#### 1.  The Report

Judge Willis concluded that Plaintiff's claims "against Trooper O'Connell should be dismissed because they are time barred."  (Rep. 11.)  "Section 1983 claims based on events occurring in New York are subject to a 3-year statute of limitations."  (*Id.* (citing *Hogan v. Fischer*, 73 F.3d 509, 517 (2d Cir. 2013); *Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir.

8

2002)).  Plaintiff filed her complaint on August 10, 2023, and her allegations against Trooper

O'Connell are based on events occurring on January 21, 2017.  (*Id.* at 11–12.)  Therefore,

Plaintiff's claims became untimely in "January of 2020."  (*Id.*)

Judge Willis correctly points out that Plaintiff's reference to the tolling of certain

deadlines during the COVID-19 pandemic by executive order cannot help her as the Executive

Order tolling said deadlines was not issued until March 7, 2020, and the Executive Order in

question only applied to limitations periods that had not already run by the time of its issuance.

(*Id.*; *see also Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 271 (N.D.N.Y. 2023)

("Nothing in the Executive Order indicates that it is to be retroactively applicable and, '[b]y its

clear terms, it cannot be read to revive already expired time limitations[.]'" (quoting *Jackson v.

Wilcox*, 70 Misc. 3d 1208, 2021 WL 97591 at *1 (Sup. Ct., Alb. Cnty. 2021)).

Additionally, Judge Willis correctly found that "the State of New York does not violate

the right to travel when it requires vehicles to be inspected or drivers to obtain driver's

licenses."[1]  (Rep. 12–13.)  Judge Willis also correctly declined to stretch the Constitution so far

as to contravene settled precedent that states may inspect vehicles and require a driver's license

in order to operate a motor vehicle.  (*Id.* (citing *Town of Southold v. Town of E. Hampton*, 477 F.

3d 38, 54 (2d Cir. 2007)).  Indeed, Plaintiff's objection would have me render the long-

established patchwork of state motor vehicle licensing requirements unconstitutional, which runs

headlong into long-established caselaw and precedent.  S*ee Dan v. New York*, No. 24-CV-01233,

---

[1] A state law implicates the right to travel only "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right."  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 100 (2d Cir. 2009); *see also Haselton v. Amestoy*, No. 03-CV-223, 2003 WL 23273581, at *2 (D. Vt. Nov. 4, 2003) ("[T]he constitutional right to travel guarantees citizens of one state the right to enter and leave other states or to be treated as welcome visitors in other states, not the right to drive a car without a license." (internal quotation marks omitted)).

2025 WL 1448314, at *10 (N.D.N.Y. May 20, 2025), *report and recommendation adopted*, 2025 WL 2046169 (N.D.N.Y. July 22, 2025) ("[T]here is well-settled law stating that a state has a right to enforce its vehicle and traffic laws requiring licensing and registration of motor vehicles. It is clear that no constitutional right was violated by any requirement that he be required to have a valid license and registration to operate his motor vehicle."). Like the other courts ruling on such issues, I decline to find state motor vehicle licensing requirements unconstitutional.

Further, the Report explains that Plaintiff's inspection report for her vehicle postdates Trooper O'Connell's traffic stop. (Rep. 14.) Therefore, as a factual matter, it cannot possibly rebut any probable cause that would attach to Trooper O'Connell's stop and issuance of a ticket. (*Id.*) Therefore, Plaintiff's objection related to her Unreasonable Search and Seizure Claim cannot succeed. (*Id.* at 13–14.)

Because Plaintiff's claims all fail on the merits against Trooper O'Connell, I need not and do not address the topic of qualified immunity. *See Rodriguez v. Vill. of Ossining*, 918 F. Supp. 2d 230, 241 n.17 (S.D.N.Y. 2013) ("Because Plaintiff's [] claim fails for all the reasons stated above, I need not consider whether Defendant [] is entitled to qualified immunity with respect to that claim."). However, the Report correctly notes that the doctrine would, in fact, present an additional barrier to recovery, even were Plaintiff's claims to have merit on their own terms. (Rep. 16–17.)

### 2. Plaintiff's Objections

Plaintiff appears to argue that the Report misconstrues the legal standard required at the motion to dismiss stage. (Objs. 8.) However, the Report accurately recites and applies the "plausible claim for relief" standard enunciated by the Supreme Court repeatedly over the last twenty years. (Rep. 7.) Additionally, it explains that "[t]he pleading standard is generally lower

for a *pro se* litigant," (*Id.* at 7), which mirrors the "less stringent standard" language put forward in the Objections, (Objs. 8.)

With regard to Plaintiff's "right to travel" claim, she argues that the Report miscategorizes her document submitted on November 2, 2017, because it failed to call it a "Declaration of Express Trust," which she appears to believe imbues the document with some legal significance. (*Id.* at 3, 12.) Here, however, Judge Willis correctly identified the document in question, and regardless of what that document is called, a notice sent to the Court that it "refused a woman's right to travel" cannot immunize a person from the licensing requirements that states routinely implement with regard to the operation of motor vehicles. (Rep. 3, 12–13.) Plaintiff's argument with regard to this document does not address the substance of the conclusions contained in the Report. Regardless of the document's title, it cannot retroactively validate an "inspection tag" that Plaintiff herself acknowledges on the first page of her objections "had recently expired." (Objs. 1.) That it "was renewed immediately" is of no matter if the inspection tag was invalid at the time of the traffic stop by Trooper O'Connell. (*Id.*)

Plaintiff further objects to Judge Willis's depiction of Plaintiff's causes of action, arguing that the ticket was "illegal[]" because it was "on private property," and Trooper "O'Connell cannot enforce traffic laws and issue citations for violations that happen on private streets and parking lots," and that therefore "[a]ll actions taken by State Trooper O'Connell was fruit of the poisonous Tree." (*Id.* at 4–5.) Similarly, Plaintiff argues that Trooper O 'Connell "violated the United States Constitution Fourth Amendment by doing government business on private property." (*Id.* at 8; *see also id.* at 13; Supp. Objs.) Putting to the side the fact that "Courts . . . have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment," *LoSardo v. Ribaudo*, No. 14-CV-6710, 2015

11

WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015), it is axiomatic that "[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls," *California v. Carney*, 471 U.S. 386, 392 (1985) (internal quotation marks omitted), and the New York state traffic laws still apply on private property, *see Kennelly v. Secord Transportation Co.*, 173 F. Supp. 247, 247–49 (S.D.N.Y. 1959) (rejecting argument that New York State Traffic laws did "not apply to private property"). Plaintiff's objections to the contrary are unavailing.

Plaintiff also appears to argue that the statute of limitations should begin not from the date that Trooper O'Connell issued the ticket, on January 21, 2017, but rather from August 20, 2017, because from "February 2017 through August 2017 his illegal traffic ticket was written in violation of the Fourth Amendment because Plaintiff committed no crime." (Objs. 10; *see also id.* at 17.) Plaintiff seems to base this tolling of the statute of limitations on the fact that her ticket could not have been "heard or read by th[e] court" until July or August of 2017. (*Id.* at 10–11.) Even if this were a legally operative fact in the record that could toll the statute of limitations from February through August of 2017 (Plaintiff fails to plead as much and I do not find it to be the case), Plaintiff ignores the fact that executive order she argues applies to her claims "only tolled claims for 'a total of 228 calendar days,'" which is less than one calendar year. (Rep. 12 (citing *Anekwe v. Bernstein*, No. 21-CV-11108, 2023 WL 4533659 (S.D.N.Y. 2023)). Therefore, even were I to accept Plaintiff's dubious legal and factual arguments, Plaintiff did not bring suit until October 2023 so her claim still falls well outside of the statute of limitations as nearly three years would have passed prior to the signing of Executive Order 202.8 and nearly two years from its expiration. Plaintiff's conclusory and baseless statement that "[t]he statute of limitations expired on August 20, 2023, for the August 20, 2017 Suspensions caused by" the January 21, 2017 ticket does not prove otherwise. (*See* Objs. 11.)

Plaintiff alleges that the Report "misunderstood" the DLSRA and "believed the law is solely for not appearing at Traffic Court," whereas "the law is to be honored" if Plaintiff responded. (*Id.* at 3.) She also claims that the Report "misunderstood the laws and how they were violated" and that the Wawayanda Town "Defendants chose to ignore the NYS Law and falsely claim Plaintiff never answered the ticket." (*Id.* at 5–6.) Similarly, "the Senators of the State of New York," "voted to cancel all Registration suspensions initiated by Traffic Courts." (*Id.* at 12.) She objects to the Report's conclusion that the DLSRA does not apply, claiming that she "did answer in writing" "all Hearing documents in writing in opposition" and claims, without support, that the Town Court "falsif[ied] the fact claiming that they did not receive any of my documents." (*Id.* at 14.) Therefore, she argues that she did appear and answer her ticket within the meaning of the New York state vehicle and traffic laws. (*Id.*) I find that because Plaintiff has not presented any proof that she actually appeared in person in Wawayanda Town Court, as she must under the law, (*see* Rep. 15–16 (citing VTL § 510)), Plaintiff has failed to raise any cognizable doubts about the conclusions expressed in the Report.

To the extent Plaintiff's Objections challenge the conclusions of state law in the first paragraph of Section II.A.4 of the Report, (*see* Objs. 14–15), I find that these Objections do not invalidate the conclusions expressed in the Report because they ask me to overturn a state court decision on an issue of state law and the proper remedy for such a dispute is through relief in the state court system. "This federal court has no jurisdiction to review state court judgments for alleged incorrect interpretations of state law," under § 1983. (Rep. 16 (citing *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985).) The proper mechanism for Plaintiff to challenge whether her suspension should be lifted is either through "ask[ing] the Town Justice of Wawayanda to vacate any penalty," or to "seek an administrative review under Article 78." (*Id.*

13

at 15–16.)  Further, Plaintiff did not even assert a claim in the Complaint against Trooper

O'Connell under the DLSRA, only against the Wawayanda Town Defendants.  (Compl. ¶ 50.)

Indeed, there is no question that Trooper O'Connell has no authority to reinstate Plaintiff's

suspended license, which is the action (or inaction) that Plaintiff appears to challenge with her

DLSRA claims.  (*See* Doc. 33 at 8 ("Defendant O'Connell does not have the authority to repeal a

license suspension.").)

Further, the language in question that Plaintiff cites is not from an existing statute, but

rather is from a proposed version of legislation in the State Assembly.  NY Legis. 382 (2020),

2020 Sess. Law News of N.Y. Ch. 382 (A. 7463-B) (McKinney's).  Indeed, the bill that was

ratified and promulgated did not include the language that Plaintiff cites in her Objections that

incorporates "failure to appear, [or] answer."  N.Y. Legis. 76 (2021), 2021 Sess. Law News of

N.Y. Legis. Memo Ch. 76 (S. 2558) (McKinney's).  Similarly, Plaintiff obviously cannot bring

claims under an unenacted proposed bill in the New Hampshire that is not operative law

anywhere, much less in New York.  (Rep. 14–15.)

Plaintiff claims that the Report "ignore[s]" "case law," in determining that "many of the

Defendants are immune from suit."  (Objs. 2; *see also id.* at 10.)  With regard to Trooper

O'Connell, Plaintiff appears to confuse Qualified Immunity, which is a judge-made doctrine that

"shields police officers acting in their official capacity from suits for damages . . . unless their

actions violate clearly-established rights of which an objectively reasonable official would have

known," *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (quoting *Thomas v. Roach,* 165 F.3d

137, 142 (2d Cir. 1999)), with Sovereign Immunity under the Eleventh Amendment, which "is a

jurisdictional bar which deprives federal courts of subject matter jurisdiction."  (Rep. 6 (internal

14

quotation marks omitted).)  The latter is not alleged to be a defense by Trooper O'Connell or mentioned in the Report as a defense for this defendant.

Plaintiff also states she was not aware the New Hampshire house bill she used to assert a claim against Trooper O'Connell was not enacted.  (Objs. 13.)  Plaintiff's ignorance of the state of the law does not alter the fact that the proposed law does not apply, nor does it impact the fact that even if the New Hampshire proposed statute were the law in New Hampshire it would not apply outside of New Hampshire in New York.  Plaintiff's other objections to Magistrate Judge Willis's determination that the proposed New Hampshire law was inapplicable to the instant matter do not impact Judge Willis's correct conclusion that it cannot apply here.  (Rep. 14–15.)

Since I agree with Judge Willis that Plaintiff cannot state a claim against Trooper O'Connell for any violation of a statutory or constitutional right, it goes without saying that Trooper O'Connell did not "violate[] a 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Jones*, 465 F.3d at 55 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, (2002)).  Therefore, Plaintiff's Qualified Immunity objections, (*see* Objs. 15–17), tautologically cannot pass muster.

Plaintiff's objections are OVERRULED and the Report is ADOPTED in full as to Defendant O'Connell.

### C.  *Wawayanda Town Defendants' Motion to Dismiss*

#### 1.  The Report

Judge Willis explains in the Report that the claims against the Wawayanda Town Defendants fail because they are time-barred, and the Wawayanda Town Defendants are immune from suit.  (Rep. 17.)  Any claims arising out of the traffic stop made by Trooper O'Connell

against the Wawayanda Town Defendants would be time-barred for the same reasons they are time-barred against Trooper O'Connell.  *Supra* § III.B.

Further, the Wawayanda Town Defendants are immune from suit.  New York's sovereign immunity under the Eleventh Amendment bars suit against the Town Court, which is "part of the New York State Unified Court System."  (Rep. 18–19 (quoting N.Y. Const. Art. 6 § 1(a)).)  Judge O'Connor has absolute judicial immunity from any lawsuit claiming that he improperly implemented the DLSRA.  (*Id*. at 19–20 (citing *Mireles v. Waco*, 502 U.S. 9 (1991); *Green v. Maraio*, 722 F. 2d 1013, 1016–18 (2d Cir. 1983); *Montero v. Traves*, 171 F. 3d 757, 760 (2d Cir. 1999) (per curiam); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527 (N.D.N.Y. 1997.)).)  In order to properly allege a Section 1983 violation against the Town of Wawayanda, Plaintiff must make out a *Monell* claim.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also* Rep. 20–21.  Because Plaintiff fails to plead such a policy or custom in violation of the law, her claims must fail.

### 2.  Plaintiff's Objections

Plaintiff alleges that the Report "misunderstood the Jurisdiction the Federal Court has regarding N.Y. State laws," and that "[t]he Court has Supplementa[l] Jurisdiction pursuant to 28 U.S.C. § 1367 for state laws violated."  (Objs. 6–7; *see also id.* at 17.)  She appears to argue that I should rule against the Wawayanda Town Defendants for violating the DLSRA even in the absence of a cognizable 1983 violation.  This objection is not well taken because, as explained

16

above, Plaintiff's claim that anyone violated the DLSRA is based on (a) unsupported factual allegations that she appeared to contest her suspension, and (b) mistakenly relying on a draft unenacted statute. *See supra* § III.B.2.

Further, as Judge Willis explained, (Rep. 15–16), and I agree, the appropriate mechanism for Plaintiff to challenge a decision made by a state court is to appeal the state court decision, not to bring a Section 1983 claim in the Federal Court system, since it is black letter law that 1983 claims cannot be brought that exclusively allege violations of state law. *Pollnow*, 757 F.2d at 501 (citing *Davis v. Scherer*, 468 U.S. 183, 193 (1984)) ("[A] violation of state law is not cognizable under § 1983."). Plaintiff's objection in her supplemental responses that she never "had the opportunity to file an appeal," because she was "never told to file an Appeal," also fails. (Supp. Objs.) Plaintiff can point to no caselaw, and indeed I am not aware of any case, that suggests that civil litigants need to be "told to file an Appeal," (*id.*), in order for them to have an "opportunity" to file such an appeal, (*id.*). *See United States v. Douglas*, 874 F.2d 1145, 1163 n.31 (7th Cir. 1989), *abrogated by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990) ("[F]ailure to understand and comply with the rules governing appeals [] will virtually never qualify as 'excusable neglect' under Rule 4(b)," of Federal Appellate Procedure justifying failure to file a timely appeal).

Plaintiff also claims that the Report "misrepresents immunity," which is applied to the Wawayanda Town Defendants to the extent they properly brought Eleventh Amendment immunity claims. (Objs. 7, 17–18.) Here, there is a legal distinction between the Town of Wawayanda and the Wawayanda Town Court. The Court is an arm of the state court system and so is subject to Eleventh Amendment Sovereign Immunity. (Rep. 18–19.) The Town of Wawayanda is a municipality, immune from suit under 1983 except to the extent that Plaintiff

17

properly pleads *Monell* liability. As Plaintiff fails to plead facts to support a *Monell* claim, her claims against the Town of Wawayanda cannot survive a motion to dismiss. (Rep. 20–21; *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("[C]onclusory and speculative assertions" do not suffice to defeat a motion to dismiss *Monell* claims).) Further, as Judge Willis describes in the Report, the Town cannot be held "responsible for the actions of their employees," (*see* Objs. 18), in a *respondeat superior* capacity, (Rep. 20–21).

All of Plaintiff's objections to the Report's conclusions regarding allegations directed at Judge O'Connor only reinforce Judge Willis's findings. (Objs. 18–20). The objections demonstrate that Plaintiff is merely asserting a litany of grievances with Judge O'Connor's decision and reasoning, including claiming he "ignored all documents related to the Motion to Dismiss", "refuse[d] to honor the Law," and "did not have jurisdiction to issue anything or suspend anything." (*Id.*) Plaintiff can do no better than make conclusory statements that Judge O'Connor "violated the law" and an order from "Judge Schumacher." (*Id.*) Plaintiff, despite filing ten motions styled as "letters" or "notices" since the filing of the Report, has failed to append such an order to any such filing.[2] Even if she did attach such an order, that would not change the fact that Judge O'Connor is immune from suit under the judicial immunity doctrine. (Rep. 19–20.) Plaintiff alleges no particularized facts that would plausibly raise the possibility of piercing that immunity.

Finally, according to Plaintiff, the "law is not time bar[r]ed because the [Wawayanda Town] Defendants have violated the 2020-2021 law by ignoring it and falsifying the facts of an Answer to the court." (Objs. 6.) As Judge Willis explained "the best characterization of Ms.

---

[2] Because the "Notice of Hardship and Motion to Enforce Constitutional [R]ight to Travel," (Doc. 118), merely rehashes old arguments relating to Plaintiff's Right to Travel that I have already explained fail, this motion is denied as well.

18

Lee's claims is that she is alleging the wrongful suspension was an unconstitutional deprivation of her rights under § 1983." (Rep. 8.)  Therefore, because Section 1983 claims are subject to a three-year statute of limitation, her claims are time-barred and should be dismissed.  (*Id.*)  To the extent Plaintiff brings claims that allege wrongful application of the DLSRA against the Town Defendants based on conduct occurring in 2020–21, they are barred by the various immunity doctrines, as discussed *supra* § III.C.1.

Therefore, Plaintiff's objections are OVERRULED, and the Report is ADOPTED in full as to the Wawayanda Town Defendants.

### D.  *NYPD Defendants' Motion to Dismiss for Failure to Prosecute*

#### 1.  The Report

Judge Willis correctly granted the NYPD Defendants' motion to dismiss under Rules 37 and 41.  (Rep. 21–25.)  Plaintiff brought claims against the NYPD Defendants for emotional and physical injuries.  (Compl. ¶ 47.)  She alleged that the NYPD Defendants' conduct "cause[ed] Emotional harm and physical injury."  (*Id.*)  In order to evaluate the veracity of her claims and the extent of any possible damages, I held in a January 11, 2024 Order that it was necessary for Plaintiff to "sign medical releases that will allow [NYPD Defendants] to fully investigate Plaintiff's complaint."  (Doc. 57; *see Komatsu v. City of New York*, No. 20-CV-10942, 2022 WL 1446545, at *8 (S.D.N.Y. Apr. 21, 2022) (collecting cases dismissing suits brought by pro se plaintiffs based on failure to provide medical releases), *report and recommendation adopted*, 2022 WL 2188170 (S.D.N.Y. June 17, 2022), *appeal dismissed* (Aug. 4, 2022).)  I also cautioned Plaintiff that "the failure to comply with this Order may lead to dismissal of the below-referenced Defendants under Federal Rules of Civil Procedure 37(b)(2)(A) and 41(b)."  (Doc. 57; *see Lebron v. Ramos*, No. 19-CV-2598, 2022 WL 2905171, at *1 (S.D.N.Y. July 21, 2022)

(dismissing a case where the plaintiff failed to provide HIPAA releases).)  Plaintiff has still not signed the required medical releases necessary for her to prosecute her case.

As Judge Willis explained, courts evaluating motions to dismiss under Rule 41 consider "(1) the duration of plaintiff's failure to comply with court orders; (2) notice to plaintiff that failure to comply would result in dismissal; (3) possible prejudice to defendants from further delay; (4) the balance between the interest of managing the court's docket and the plaintiff's right to be heard; and (5) consideration of lesser sanctions."  (Rep. 21–22 (citing *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999)).)  Under Rule 37, courts analogously consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  (Rep. 22 (citing *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012)).)

Here, nearly two years have elapsed since my January 11, 2024 Order which explicitly warned Plaintiff that failure to comply could result in the dismissal of her claims under Rules 37 and 41.  (Doc. 57.)  Therefore, factors (1) and (2) of the Rule 41 test and factors (3) and (4) of the Rule 37 test support dismissal.  (*See* Rep. 23.)  For nearly two years, Plaintiff has willfully defied my order, (Doc. 57), that she sign the required medical releases for Defendants to investigate Plaintiff's Complaint.  As Judge Willis correctly points out, this substantial passage of time reinforces the conclusion that no sanction other than dismissal would be appropriate here. (Rep. 24 (citing *Workneh v. Super Shuttle International, Inc.*, No. 15-CV-3521, 2020 WL 3492000, at *10 (S.D.N.Y. 2020); *Watkins v. Marchese*, No. 13-CV-3267, 2015 WL 4605660, at *15 (S.D.N.Y. 2015)).)

### 2.  Plaintiff's Objections

Plaintiff objects to the fact that the New York City Police Department and the John Doe Defendants never answered the complaint.  (Objs. 24.)  However, the fact that neither the NYPD nor the John Doe Defendants answered has no impact on the Report's analysis under Rules 37 and 41, which addresses whether Plaintiff's deliberate refusal to sign the required medical releases pursuant to my January 11, 2024 Order warrants dismissal of the case.  (*See* Rep. 21–25.)  Plaintiff claims that the Report "incorrectly misrepresents failure to prosecute because Plaintiff never failed to appear in court and NYPD named Defendants did not answer the Complaint."  (Objs. 9.)  However, the NYPD Defendants complied with the Federal Rules of Civil Procedure in responding to Plaintiff's lawsuit.  Plaintiff filed her lawsuit on August 10, 2023.  (Compl.)  On September 8, 2023, I set the deadline of November 13, 2023 for all Defendants to respond.  (Doc. 8.)  On November 2, 2023 the NYPD Defendants filed a motion for extension of time to file their answer, until January 12, 2024.  (Doc. 29.)  I granted that motion on November 3, 2023.  (Doc. 30.)  On January 10, 2024, NYPD Defendants filed a letter motion requesting a sixty-day extension of their deadline until March 12, 2024.  (Doc. 56.)  On January 11, 2024, I granted that extension request and signed an Order requiring Plaintiff to sign the medical releases necessary for her to continue to prosecute her case.  (Doc. 57.)  On March 8, 2024, with Plaintiff having failed to sign said releases, NYPD Defendants moved to dismiss for failure to prosecute.  (Doc. 61.)  Therefore, NYPD Defendants were never required to file an answer, as they properly filed a motion to dismiss for failure to prosecute.  *See Diallo v. City of New York*, No. 95-CV-5483, 1996 WL 288240, at *1 (S.D.N.Y. May 31, 1996) ("Equally obvious, defendants are not required to answer the complaint while their motion to dismiss is

21

pending.")  Therefore, all of Plaintiff's objections regarding the NYPD Defendants' failure to answer are without merit.  (*See* Objs. 23– 25.)

Plaintiff also claims that the failure to prosecute motion is not valid because the NYPD Defendants' attorney did not appear in this case until March 22, 2024, after the Rule 37 and 41 motion was filed.  (*Id.* at 24, 28.)  However, "failure to file a Notice of Appearance prior to filing [a] motion does not provide an independent basis for denying" that motion.  *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 156 (E.D.N.Y. 2016).  Plaintiff cites no caselaw or rule that would persuade me to the contrary.

Plaintiff posits several excuses for her failure to submit medical releases:  (1) "[she] was never informed of an Order," for her to release her medical records, (Objs. 9); (2) that she "has not failed to provide her medical records", (*id.* at 21–23); and (3) that "[t]he order was not mailed to Plaintiff and she never received such order," (*id.* at 9–10).  She, variously, purports to blame the "Pacer Corporation," for her delay, (*id.* at 24, 26, 28), the "Prose department", (*id.* at 21–23), or alleges, without support, that she did ultimately send the medical files in question to the NYPD Defendants' Attorney, (*id.* at 24–27), but that NYPD Defendants' Attorney, "gave an incomplete business address," so the mail was returned, (*id.* at 27–28).  Plaintiff's factual objections are contradictory and conclusory, and do not go to the gravamen of the conclusions reached in the Report.  *See Rodriguez v. City of New York*, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009) (citing *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)) ("A claim that rests only on conclusory allegations cannot survive a motion to dismiss.") However, Plaintiff also tacitly admits to having notice of the medical records request, as she

admits she received this request and that she subsequently "requested a Foreign Registration

Statements from a man requesting medical records." (Objs. 24.)[3]

Plaintiff filed her objections more than a year ago and still has not signed the medical

releases as required by my January 11, 2024 Order. (Doc. 57.) This is more than sufficient to

justify dismissal under Rules 37 and 41, as "[d]elays of several months have been found to

warrant dismissal." *Caussade v. United States*, 293 F.R.D. 625, 629 (S.D.N.Y. 2013) (collecting

cases). Any purported lack of notice that was present in September 2024 was cured by the more

than a year that has elapsed since, especially considering that Plaintiff has filed ten letters to the

Court in that time period. (*See* Docs. 110–19.) If Plaintiff had intended to cure her failure to

adhere to my January 11, 2024 Order, she could have and should have done so. *See Cain v.

Simon & Schuster*, No. 11-CV-4460, 2013 WL 1608620, at *3 (S.D.N.Y. Apr. 15, 2013) (delays

"of five to eight months are usually sufficient" to warrant dismissal).

For these reasons, Plaintiff's objections are OVERRULED, and the Report is ADOPTED

in full as to the NYPD Defendants.

### E. *Leave to Amend*

Plaintiff's motion to amend her complaint is also denied. The Second Circuit has

"explained that an amendment is futile if it 'would fail to cure prior deficiencies or to state a

claim under Rule 12(b)(6).'" *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 170 (2d Cir. 2025)

(citing *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (internal quotation

marks omitted)).) Here, the problems with Plaintiff's claims are fundamental and, ultimately,

fatal.

---

[3] Defendants allege that rather than complying with my order, Plaintiff refused to sign the releases unless the NYPD
Defendants signed a "Current Foreign Registration Statement." (Doc. 61 at 2.)

At bottom, Plaintiff has two types of claims that she tries to bring in this lawsuit against the Town Defendants and Trooper O'Connell:  (1) Section 1983 claims for actions arising from the January 21, 2017 ticket issued by Trooper O'Connell; and (2) Claims against the Town Defendants for incorrectly applying state law.  The former claims are time-barred and the latter claims are barred by immunity doctrines.  Plaintiff's amended complaint does not cure these fatal flaws with her suit.  *See Wallace v. N.Y.C. Dep't of Corr.*, 112 F. App'x 794, 795 (2d Cir. 2004) (summary order) (affirming district court's denial of leave to amend where the statute of limitations had run and amendment would be futile); *Kelly v. New York State Unified Ct. Sys.,* No. 21-1633, 2022 WL 1210665, at *3 (2d Cir. Apr. 25, 2022) (affirming district' court's denial of leave to amend where sovereign immunity barred suit and amendment would be futile).

Plaintiff's motion to amend her Complaint also does not cure her failure to release her medical records and her consequent long-standing violation of my January 11, 2024 Order, (Doc. 57), which has resulted in the dismissal of her claims against the NYPD Defendants.  *See supra* § III.D.

Therefore, Plaintiff's motion for leave to amend her complaint is DENIED.

**IV.**    **Conclusion**

For the foregoing reasons, Magistrate Judge Willis's Report and Recommendation is

ADOPTED in full and Plaintiff's motion for leave to amend her Complaint is DENIED.  The

Clerk of Court is respectfully directed to terminate Docs. 19, 32, 59, 61, 63, 66, 73, 91 and 118

and dismiss this action with prejudice, and close the case.

SO ORDERED.

Dated: January 14, 2026
      New York, New York

_____
Vernon S. Broderick
United States District Judge